UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ANDREW DENTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 2:25-cv-406 |
| | ) | |
| PURDUE UNIVERSITY BOARD OF | ) | |
| TRUSTEES d/b/a PURDUE | ) | |
| UNIVERSITY GLOBAL INC, | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Andrew Denton is a police officer at the Purdue University Police Department. He alleges that Purdue failed to promote him and substantially changed his duties in retaliation for complaints he made relating to sexual harassment in the workplace. Purdue moves to dismiss the amended complaint with prejudice, arguing that the claims are time-barred or otherwise too remote. [DE 17.] For the reasons stated below, the motion is granted in part and denied in part.

**Background**

In 2008, Andrew Denton began working for the Purdue University Police Department as a police officer. [DE 11, ¶ 5.] The same year Denton began working as a police officer, he noticed that his Captain was exhibiting inappropriate behavior in the workplace. *Id.* at ¶ 7. Denton alleges that the Captain would stretch in an overtly sexual manner during training sessions and touch himself inappropriately. *Id.* at ¶ 8. He further alleges that the Captain has a history of inappropriately touching officers,

including intentionally brushing up against Officer Denton's rear end on multiple occasions. *Id.* at ¶ 10. He further alleges that, on several occasions, the Captain would get undressed, bend over, and then call for an officer to look in his direction. *Id.* at ¶ 12. Denton claims that Defendants failed to discipline the Captain despite the misconduct being witnessed by police department leadership multiple times. *Id.* at ¶ 9.

Between 2008 and 2023, the timing of some key events gets a bit unclear, and the details of those events get even blurrier. At an unidentified time, Denton states that he told the Captain he would file a sexual harassment complaint against him if he ever touched him again. *Id.* at ¶ 11. Then, in 2017, Denton in fact filed a formal complaint about the Captain's behavior. *Id.* at ¶ 13. It is unclear from the amended complaint exactly when in 2017 this formal complaint was filed, or what specifically prompted Denton to file the complaint then. Denton's amended complaint contains no allegations as to what, if any, follow-ups or results arose from his 2017 complaint.

Some time in 2019, Denton sought a promotion. *Id.* at ¶ 14. Denton alleges that the Captain denied his request for a promotion and told him he does not trust him. *Id.* at ¶ 14. Then, 2021 and 2022, the Captain denied subsequent promotion requests sought by Denton, even though he claims to have been the most qualified and experienced candidate. *Id.* at ¶ 15.

On September 19, 2023, the Captain substantially changed Denton's job duties without an explanation. *Id.* at ¶ 16. These changes included removing his instructor responsibilities, which impacted Denton's pay and overtime eligibility. *Id.* at ¶ 17. In November of 2023, Denton alleges the Captain informed Defendants' Senior Human

Resources Director that he did not promote Denton and treated him differently because he had filed a complaint against him. *Id.* at ¶ 18.

Denton filed a charge with the Equal Employment Opportunity Commission ("EEOC"), although the complaint, somewhat suspiciously, does not state when he filed that charge with the EEOC. *Id.* at ¶ 2.[1] Denton says that he received a notice of a right to sue on June 25, 2025. *Id.* Denton filed his original complaint in this case on September 4, 2025, and filed his amended complaint on November 25, 2025.

## Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a claim for relief must be "plausible on its face." *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility requires the plaintiff to plead sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha v. Int'l Brotherhood of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A plaintiff must plead facts that "suggest a right to relief that is beyond the speculative level," which requires alleging "enough details about the subject-matter of the case to present a story that holds together." *Sevugan v. Direct Energy Servs., LLC*, 931

---

[1] Defendants state in their briefing that Denton filed his charge with the EEOC on March 3, 2024. [DE 18, 3.] Denton corrects this in their response, stating that the charge was actually filed a day later on March 4, 2024. [DE 22, 2-3.]

F.3d 610, 614 (7th Cir. 2019); *Swanson v. Citibank*, N.A., 614 F.3d 400, 404 (7th Cir. 2010). While I must accept the complaint's allegations as true and draw all reasonable inferences in Plaintiffs' favor, see *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021), "sheer speculation, bald assertions, and unsupported conclusory statements" in the complaint fail to meet this burden, *Taha*, 947 F.3d at 469.

### Discussion

Officer Denton's amended complaint contains two counts, both under Title VII. Count I alleges that Defendants violated Title VII by retaliating against him for engaging in protected activity by substantially altering his duties because he filed the 2017 Complaint. Count II alleges that Defendants failed to promote Denton in 2019, 2021, and 2022 directly because he filed the 2017 Complaint. I will discuss Defendants' arguments to have the counts dismissed in turn.

### I.     Count I: Allegation That Denton's Duties Were Substantially Changed in Retaliation for the 2017 Complaint

Defendants argue that Count I fails to state a plausible claim because the action that Denton alleges caused the retaliation—the 2017 Complaint—lacks the temporal proximity to the alleged retaliation (that is, removing his instructor duties in September 2023) to plausibly be related. Defendants argue that "[o]n its face, this six-year-later retaliation claim simply does not state a plausible claim of retaliation." [DE 18, 4.] If Denton were solely relying on temporality to create an inference of a causal connection, then I would agree. Indeed, Defendants cite multiple cases where a tenuous temporal proximity *alone* is insufficient for a causal inference. *See, e.g., Hughes v. Derwinski*, 967

F.2d 1168, 1174-75 (7th Cir. 1992) ("The temporal proximity of Hughes's filing and the issuance of either letter, *standing by itself*, does not sufficiently raise the inference that Hughes's filing was the reason for the adverse action.") (emphasis added); *Martinez v. Nw. Univ.*, 173 F. Supp. 3d 777, 788 (N.D. Ill. 2016) ("[P]laintiff has failed to point to any causal connection between them and her statutorily protected activity... *Timing alone*, however, rarely creates an issue of fact.") (emphasis added).

But Denton is not relying on temporal proximity alone to make this claim. In fact, Denton does not rely on temporal proximity much at all. Instead, Denton alleges that the Captain *admitted* that he treated him differently because he had filed a complaint against him. *Id.* at ¶ 18. Defendants have failed to provide a convincing argument as to why *that* allegation does not provide causation. Accepting Denton's allegation as true at the pleading stage and drawing all reasonable inferences in his favor, the allegation that the Captain directly stated that he was taking adverse action against Denton because he filed the 2017 Complaint, provides the causation necessary for a plausible Title VII claim.

Additionally, I note that the distinct employment action at issue in Count I—the September 2023 substantial change of Denton's duties, including the removal of his instructor duties—happened within 300 days of Denton filing his EEOC charge in March 2024, meeting the time requirement mandated by 42 U.S.C. § 2000e-5(e)(1). For reasons discussed below, this is a critical distinction between Count I and Count II.

### II.    Count II: Allegation that Defendants' Failed to Promote Denton Because He Filed the 2017 Complaint

Under Title VII, a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1); *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 886 n.58 (7th Cir. 2016) ("Under Title VII, a charge of employment discrimination must be filed with the EEOC within 300 days of the alleged unlawful employment practice."). In Count II, Denton alleges that the Captain failed to promote him in 2019, 2021, and 2022. However, he did not file a charge with the EEOC until March 4, 2024. [DE 22, 2-3.] Regardless of when, in each year, the Captain decided not to promote Denton, none of those decisions could be within 300 days of March 4, 2024. Defendants argue that, because of this, Count II must be dismissed.

In response, Denton points to the continuing violation doctrine. In the Seventh Circuit, if "discrete acts of discrimination are part of an ongoing pattern and at least one of the discrete acts occurred within the relevant limitations period" then a court may litigate the full panoply of acts that were part of that ongoing pattern. *Tinner v. United Ins. Co. of America*, 308 F.3d 697, 707 (7th Cir. 2002). This is the theory of continuing violation that Denton argues is applicable to this case. [DE 22, 3-5.] However, the Supreme Court and the Circuit have been clear that the pattern theory of the continuing violation doctrine does not lend itself to failure to promote claims.

In *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Supreme Court decided that a hostile work environment claim was timely despite some of the events

occurring outside of the 300-day time limit to file a charge with the EEOC. The Court found that hostile work environment claims were "different" from many other types of claims because the "unlawful employment practice" could not "be said to occur on any particular day." *Id.* at 115. The Court went on to explain "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice' which would be timely if filed within '300 days of any act that is part of the hostile work environment.'" *Id.* at 117-118.

The Supreme Court was careful to stress how different this is specifically from, amongst other things, failure to promote claims. "Discrete acts such as termination, *failure to promote*, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Id.* at 114 (emphasis added). So, the Court held that while "Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable." *Id.*

Courts throughout the nation have consistently enforced *Morgan's* holding that a failure to promote is a discrete act that may not benefit from the pattern theory of the continuing violation doctrine, including by dismissing such claims at the pleading stage. *See, e.g., Scales v. Target Corp.*, 2024 WL 4729480, at *3 (S.D. Tex. Nov. 7, 2024) (dismissing the failure to promote claim and stating that "[t]he Fifth Circuit held in *Heath* that '[c]laims alleging discrete acts are not subject to the continuing violation

7

doctrine; hostile workplace claims are.' Scales's claim is based on a failure to promote, which is a discrete act. The continuing violation doctrine does not apply.") (internal citations omitted); *Sanders v. Government of Guam*, 2008 WL 11470985, at *2 (D. Guam Sept. 16, 2008) (dismissing the claim and stating that "[h]ere, the discriminatory employment violation complained of concerns the 'failure to promote.' This is the very example cited to by the Supreme Court in *Morgan*.").

Count II is, unmistakably, a failure to promote claim. It states it directly in the title of the count, and Denton does not attempt to argue that it is anything other than that. [DE 11.] The alleged failures to promote were separate, discrete employment actions that needed to be brought within the prescribed time limitations. *See Greater Indianapolis Chapter of NAACP v. Ballard*, 741 F. Supp. 2d 925, 936 (S.D. Ind. 2010) ("The continuing violation doctrine does not apply to adverse employment actions that are actionable as discrete events themselves. Plaintiffs claim that the continuing violation doctrine saves their claims because the alleged discrimination in promotion has continued and prevents them from re-applying for promotion. The Supreme Court has specifically rejected this argument."). The fact that *other* adverse employment actions occurred after the failures to promote does not change that fact, it merely means that those later actions (such as those discussed in Count I) may be litigated if they themselves are within the time limit.

**Conclusion**

For the reasons stated above, the motion to dismiss [DE 17] is DENIED as to

Count I and GRANTED as to Count II. Count II of the amended complaint is

DISMISSED WITH PREJUDICE, as it is time-barred.

SO ORDERED.

ENTERED: June 26, 2026.

　　　　　　　　　　　　　　/s/ Philip P. Simon
　　　　　　　　　　　　　United States District Judge